**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **COREGIS INSURANCE COMPANY,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**ELIZABETH TOWNSHIP,** )<br>**PENNSYLVANIA and JEFFREY A.** )<br>**VELTRE,** )<br>)<br>Defendants. ) | 2:05cv582<br>**Electronic Filing** |

**MEMORANDUM OPINION**

March 30, 2007

**I.    INTRODUCTION**

Plaintiff, Coregis Insurance Company ("Coregis"), filed this declaratory judgment action seeking a determination of its obligations to defend, indemnify and/or otherwise provide coverage under a policy of insurance issued to Defendant, Elizabeth Township (the "Township"), for claims asserted against the Township in lawsuits filed by Defendant, Jeffrey A. Veltre ("Veltre"), a former police officer with the Township. Coregis and the Township have filed cross-motions for summary judgment, Veltre has responded to Coregis' motion and joins in the position of the Township, and the motions are now before the Court.

**II.   STATEMENT OF THE CASE**

On or about February 25, 2004, Veltre filed a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania at Docket No. GD-001894. In his complaint, Veltre alleged claims of malicious prosecution, false arrest and civil conspiracy against Elizabeth Township police officers William Black ("Black"), David Graham ("Graham") and Robert Wallace ("Wallace"), and against Kelly J. Cindrich ("Cindrich"), a private citizen.

In a second action, filed in this Court at Civil Action No. 04-1124 on July 29, 2004, Veltre alleges claims of civil rights violations under the First and Fifth Amendments to the

Constitution, tortious interference with contractual relations and intentional infliction of emotional distress against Elizabeth Township, Black, Graham, Wallace, Cindrich and the following other individuals: Elizabeth Township police officers Jeffrey Beatty and Adam Blake, State Police Officer Paul Dschuhan, and Township Commissioners Joanne Becowitz, Regis Bazylak, Donald Similo, Glenn Johnston, Claire Bryce, Kenneth McCracken, Judy Marshall, Charles Carlock, Jr. and Helen Kochan.

Coregis issued a Municipal Package Policy (the "Policy") of insurance to the Township effective from January 1, 2002, to January 1, 2003. The Policy provided coverage for general liability, law enforcement liability, and for municipalities liability.  Coregis contends the Policy excludes coverage for all the claims and allegations set forth in Veltre's lawsuits.

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law.  To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*.  The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v.  Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56©,  its opponent must do

more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587.

IV.   DISCUSSION

Coregis contends that it is entitled to summary judgment because: (1) the Policy does not cover the intentional acts of the insureds in conspiring to terminate Veltre's employment; and (2) the Policy specifically excludes coverage for claims arising out of Veltre's employment and/or the Township's employment-related activities.  The Township, however, contends the acts were not intentional, the Policy specifically covers Veltre's claims for Malicious Prosecution and False Arrest, and the employment-related practices exclusion is inapplicable.

The interpretation of an insurance contract is a question of law for the court to decide. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997). A court must give effect to the plain language of the insurance contract read in its entirety. *Id.* at 901. When the language of an insurance policy is ambiguous, the provision must be construed in favor of the insured. *Reliance*, 121 F.3d at 900-01 (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1239 (Pa. Super. 2001) (citing *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1985)). However, the language of an insurance policy may not be stretched beyond its plain meaning to create an ambiguity. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (Pa. 1999).

The insured has the initial burden of establishing coverage under an insurance policy.

*Butterfield v. Giuntoli*, 670 A.2d 646, 651-52 (Pa. Super.1995). An insurer that denies coverage based upon a policy exclusion, however, bears the burden of proving such exclusion applies. *Continental Cas. Co. v. County of Chester*, 244 F. Supp. 2d 403, 407 (E.D. Pa. 2003); *Mistick, Inc. v. Northwestern Nat. Cas. Co.*,, 806 A.2d 39, 42 (Pa. Super. 2002). The insurer can sustain its burden only by establishing the exclusion's applicability by uncontradicted facts in the record. *See Butterfield v. Giuntoli*, 670 A.2d at 651-52; *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966). Moreover, policy exclusions are strictly construed against the insurer. *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998) (citing *Standard Venetian Blind*, 469 A.2d at 566).

An insurance carrier's duty to defend is distinct from its duty to provide coverage; and, it is interpreted more broadly than the duty to indemnify. It is interpreted more broadly than the duty to indemnify. *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. 1994). An insurer may have a duty to defend even though it may have no duty to indemnify. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). A duty to indemnify does not arise until the insured is found liable for a covered claim. *Id.*

An insurer is obligated to defend the insured against any suit arising under the policy "even if the suit is groundless, false, or fraudulent." *Britamco*, 636 A.2d at 651 (quoting *Gedeon v. State Farm Mut. Auto. Ins. Co.*,188 A.2d 320, 321 (Pa. 1963)). Consequently, whenever a complaint filed against the insured could potentially come within the policy's coverage, the insurer's duty to defend is triggered. *Belser v. Rockwood Cas. Ins. Co.*, 791 A.2d 1216, 1219, 1222 (Pa. Super. 2002); *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.*, 663 A.2d 753, 755 (Pa. Super. 1995). Moreover, if any claim in a multiple claim complaint is potentially covered, the duty to defend attaches until the underlying plaintiff can no longer recover on a covered claim. *Frog, Switch & Mfg. Co.*, 193 F.3d at 746.

Further, because the duty to defend is broader than the duty to indemnify, the complaint must be construed liberally, the factual allegations must be accepted as true, and all doubts as

to coverage resolved in favor of the insured. *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. 1997). It is necessary to look at the factual allegations in the complaint, and not how the underlying plaintiff frames the request for relief, in order to prevent the avoidance policy exclusions through artful pleading. *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). Therefore, a court must focus on the substance, not the form, of the allegations when resolving a coverage inquiry.

    A.    <u>Coverage Under the Policy and Intentional Acts Exclusion</u>

The Policy provides general liability coverage for "bodily injury" or "personal injury" caused by an "occurrence" during the policy period. Specifically, the Policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" caused by an "occurrence;" or "personal injury" and or "advertising injury" caused by an offense as more fully described in the definition of "personal injury" and "advertising injury". We will have the right and duty to defend the insured against any "suit" seeking "damages."

The Policy also provides for specifically defined "law enforcement" claims based on defined "offences" or "occurrences," provided the claim arises out of law enforcement activities. With regard to such law enforcement liability, the Policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury," "property damage" or "personal injury" caused by an "occurrence;" or offense, as more fully described in the definitions of "personal injury", in the course of your "law enforcement activity" to which this insurance applies.

Under the Policy, "personal injury" is defined as follows:

> "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:
>
>     a.    False arrest, detention or imprisonment;
>     b.    Malicious prosecution; . . .

There is no dispute that Veltre's complaint pleads the elements necessary to state a claim for both Malicious Prosecution and False Arrest. Moreover, the accused conduct of the insureds arose directly out of their law enforcement activities. Law enforcement activity is defined

5

under the Policy as "all operation of your police force or any other public safety organization which enforces the law and protects persons or property." Clearly the conduct of the insured officers complained of: the arrest of Veltre for an alleged sexual assault on Cindrich; and reporting Veltre's alleged abuse of the Commonwealth Law Enforcement Assistance Network ("CLEAN"), fall within the very definition of law enforcement activity. It appears that the Township is covered under the Policy on the Malicious Prosecution and False Arrest claims unless specifically excluded.

Coregis argues that all conduct described in Veltre's complaints constituted intentional conduct meant to deprive Veltre of his employment as a police officer for the Township, and are excluded under the Policy. Under the Policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Coregis contends that none of the claims by Veltre resulted from accidental conduct. The Court disagrees.

The question of whether something constitutes an "occurrence" must be determined from the perspective of the insured. *See Allstate Ins. Co. v. Lombardi*, 142 Fed. Appx. 549, 551 (3d Cir. 2005); *Nationwide Mut. Fire Ins. Co. v. Pipher*, 140 F.3d 222, 226 (3d Cir. 1998). Pennsylvania courts have defined both "occurrence" and "accident" in interpreting other insurance contracts. For example, in the context of the duty to defend under a homeowner's policy, the Pennsylvania Supreme Court has determined that "when it is alleged that the conduct of the insured causing harm was intentional, there has been no accident or 'occurrence.'" *Gene's Restaurant, Inc. v. Nationwide Insurance Co.*, 548 A.2d 246, 246-47 (Pa. 1988). Further, Pennsylvania courts have determined that "an insured intends injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *Wiley v. State Farm Fire & Casualty Co.*, 995 F.2d 457, 460 (3d Cir. 1993)(quoting *United Services Automobile Association v. Elitzky*, 517 A.2d 982, 989 (Pa. Super. 1986)). To determine whether an insured intended the harm, courts apply a

subjective standard. *Wiley v. State Farm Fire & Casualty Co.*, 995 F.2d at 460 (Pennsylvania standard for specific intent looks to insured's actual subjective intent). It is not enough, therefore, that the insured intend his actions, the insured must have intended to cause harm. *Id.*

In adopting this subjective intent standard, the court specifically rejected the view that intent means specific intent to cause the precise injury which did occur. "Such an approach would reward wrong-doers by affording them . . . coverage just because their plans went slightly awry." *United Services Automobile Association v. Elitzky*, 517 A.2d at 988. The court specifically stated:

> An intended harm exclusionary clause in an insurance contract is ambiguous as a matter of law and must be construed against the insurer. We hold that such a clause excluded only injury and damage of the same general type which the insured intended to cause. An insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result.

*Id*. at 989.

There is no evidence here that the police officer Defendants had the subjective intent to cause "personal injury" such as malicious prosecution or false arrest. Nor can the Court find that this same conduct evidences a subjective intent to deprive Veltre of his rights secured by the United States Constitution. To the contrary, the testimony of the officer Defendants supports a good-faith effort to bring a police officer, who they perceived as corrupt, to justice.

Black specifically testified that Veltre was charged with a crime for the alleged indecent sexual assault on Cindrich, that Veltre abused his access to the CLEAN system, and that he provided confidential police information to the target of an ongoing investigation. Graham testified that he was attempting to preserve the Township's privilege to use the CLEAN system when he reported Veltre's violation. Graham further testified that Cindrich's statements regarding Veltre's sexual misconduct were credible and believable. The undisputed testimony in the record, therefore, indicates that the officer Defendants believed Veltre had engaged in sexual misconduct, abused the CLEAN system and disseminated confidential police

information to the target of an investigation. There is no evidence that the conduct complained of by Veltre constituted intentional acts that would exclude coverage under the Policy.

      B.     <u>Employment Related Practice Exclusion</u>

Coregis further contends that it has no duty to provide coverage because the Policy excludes coverage for claims arising out of Veltre's employment and the Township's employment related practices. To accept Coregis' construction of the Policy requires a tortured reading of the Policy. All of the employment related activities complained of in Veltre's lawsuits arise out of the Township's law enforcement activity. All such employment activity by the Township's police department cannot be excluded; this would make the law enforcement coverage under the Policy a nullity.

This Court must give effect to the plain language of the insurance contract read in its entirety, and must construe the employment-related practice exclusion against Coregis. The employment related practice provision of the Policy excludes coverage for:

> "Bodily injury," or "personal injury" or "advertising injury" arising in whole or in part out of:
>
> (1)    A refusal to employ;
>
> (2)    A termination of employment;
>
> (3)    Employment practices, policies, acts or omissions, including but not limited to coercion, demotion, failure to promote, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or negligent or intentional representation.

Veltre's "personal injury" did not arise out of a termination of employment. The termination of employment was the alleged result of the conduct of Defendants as clearly set forth above. Further, the employment practice exclusion does not specifically excise personal injuries resulting from malicious prosecution, false arrest or deprivations of constitutional rights, all of which arise from the Township's law enforcement activity.

The Court finds, therefore, that Coregis is obligated to defend the Township against the

claims set forth in both the federal and state lawsuits filed by Veltre.

V.　CONCLUSION

Based upon the foregoing, the motion for summary judgment filed on behalf of Coregis will be denied, and the motion for summary judgment filed by the Township will be granted. An appropriate order will follow.

> s/ David Stewart Cercone
> David Stewart Cercone
> United States District Judge

cc:　David L. Haber, Esquire
　　　Weinheimer Schadel & Haber PC
　　　602 Law & Finance Building
　　　429 Fourth Avenue
　　　Pittsburgh, PA 15219

　　　Vincent P. Tomkiewicz, Esquire
　　　Bryan G. Schumann, Esquire
　　　Bollinger Ruberry & Garvey
　　　500 West Madison Street
　　　Suite 2300
　　　Chicago, IL 60661-2511

　　　Joseph L. Luvara, Esquire
　　　Dickie McCamey & Chilcote
　　　Two PPG Place, Suite 400
　　　Pittsburgh, PA 15222

　　　John F. Cambest, Esquire
　　　Dodaro Cambest & Associates, P.C.
　　　1001 Ardmore Boulevard, Suite 100
　　　Pittsburgh, PA 15221-5233

　　　Robert C. Eddins, Esquire
　　　2770 South Park Road
　　　Bethel Park, PA 15102